Mr. Chief Justice Johnson delivered the opinion of the Court. This was an application to this court for an alternative writ of Mandamus to be directed to the Hon. Beaufort H. Neely, judge of the Independence Circuit Court, commanding him to take cognizance of, and proceed to hear and determine a certain cause therein pending, or to show cause why he would not do so. The writ was issued in accordance with the prayer of the petition, and returned with the judge’s answer endorsed thereon, and in which he shows for cause why he had not, and why he still refuses to take cognizance thereof, that Joseph H. Egner, who is one of the defendants in said cause, is the husband of Euphemia Egner, and that said Euphemia is the maternal aunt of Margaret F. Neeley, who is the wife of the respondent. From these facts, he insists that he is related to Egner by affinity within the prohibited degrees, and that therefore he is legally disqualified to preside upon the trial. The 12th sec. of the 6th Article of the Constitution, declares that, “No judge shall preside on the trial of any cause in the event of which he may be interested, or where either of the parties shall be connected with him by affinity or consanguinity within such degrees as may be prescribed by law, or in which he may have been of counsel, or have presided in any inferior court except by consent of all the parties.” The 16th sec. of chapter 50, of the Digest, declares that “No judge of the circuit court, justice of the county court, or judge of the court of probate, shall sit on the determination of any cause or proceeding in which he is interested, or related to either party within the fourth degree of consanguinity or affinity, or shall have been of counsel without consent of parties.” The method of computing the degrees of consanguinity in the canon has been adopted by the common law, and is as follows: We begin at the common ancestor, and reckon downwards, and in whatsoever degree the two persons or the most remote of them is distant from the common ancestor, that is the degree in which they are related to each other. Thus, Titius and his brother are related in the first degree, for from the father to each of them is counted only one. Titius and his nephew are related in the second degree; for the nephew is two degrees removed from the common ancestor; viz. his own grand father, the father of Titius. (See Co. Litt. 23, and Bl. Com., vol. 2, 207.) This rule, applied to Mrs. Egner and Mrs. Neely, the latter being the niece of the former, will necessarily place them in the second degree of consanguinity to each other. Affinity is a connection formed by marriage, which places the husband in the same degree of nominal propinquity to the relations of the wife, as that in which she herself stands towards them, and gives to the wife the same reciprocal connection with the relations of the husband. It is used in contradistinction to consanguinity. (G. Y.) It is no real kindred. A person cannot by legal succession receive an inheritance from a relation by affinity, neither does it extend to the nearest relations of husband and wife, so as to create a mutual relation between them. The degrees of affinity are computed in the same way as those of consanguinity. (See Bouvier’s Law Dictionary, page 89, and the cases there cited.) The degrees of affinity being computed in the same way as those of consanguinity, it follows, as a necessary consequence, that in case there is any affinity whatever as between Neeley and Egner, it must be of the second degree, as that is the relation of their wives by consanguinity. The question then is whether there is any affinity whatever as between the husbands of the aunt and neice. The counsel on both sides have referred us to several cases, which we will now proceed to notice. The case of Blodgett v. Brinsmaid ad., (9 Vermont 30,) does not come fully up to the facts as disclosed in this. There, the objection taken was founded upon an affinity arising out of a marriage between the party who was alleged to have performed a judicial function, and the sister of the real defendant in the execution, whose property he had appraised. The appraiser having intermarried with the sister of the party, there could be no doubt of the existence of an affinity so long as the marriage continued, and consequeetly the only question for the court to determine in that case, was whether such marriage was undissolved at the time of the performance of the judicial act. The rule, as applicable to the facts of that case, was there correctly laid down, and under it there could be no doubt of the affinity, in case the marriage still subsisted. It is there said that, “consanguinity is the having the blood of some common ancestor. Affinity arises from marriage only, by which each party becomes related to all the con-sanguinei of the other party to the marriage, but in such case these respective consanguinei do not become related by affinity to each other. In this respect, these modes of relationship are dissimilar. 1 Bl. Com., ch. 15, p. 434, Christian’s Notes to do. 15 Viner’s Air. 256. The relationship by consanguinity is in its nature incapable of dissolution, but the relationship by affinity ceases with the dissolution of the marriage which produced it. Therefore though a man is by affinity brother to his wife’s sister, yet upon the death of his wife, he may lawfully marry her sister.” In the case of Higbe v. Leonard, (1 Denio 187,) the objection to the acts of the justice was, that his two brothers had married two sisters of the plaintiff, and it was also alleged that such marriage had taken place before the commencement of the suit before the justice, and that the persons so connected were still living. The Supreme Court sustained the action of the justice upon the ground that, although he was related by affinity to the two sisters of Higbe, the plaintiff, yet there was no such relation between him and Higbe. The court in that case laid down the same rule that was stated in the case already referred to in 9 Vermont, and as a matter of course, under that rule, there could exist no relationship whatever between the party and the justice. In the case of Edwards v. Russell, the proof was that the justice and the plaintiff were cousins, (21 Wend. 63.) There no doubt could exist as to the disqualification, as they were related by consanguinity, and that within the prohibited degrees. In the case of Cain v. Ingham, the substance of the decision is, that the marriage having been dissolved by death, there was no principal cause of challenge, but that under the circumstances actual favor or influence might have been shown by evidence, and if so shown, might have rendered the juror incompetent. The case of Foot v. Morgan, (1 Hill 654,) would seem to throw more light upon the question before us than any that has yet been brought to our view. In that case, a motion was made to set ofF a judgment in favor of the defendant obtained in the name of H. M. in a justice’s court, against a judgment rendered in favor of the plaintiff in that (Supreme) court. The motion was opposed on the ground that the justice’s judgment was void for want of jurisdiction, and an affidavit was produced showing that Morgan, the then defendant, was the real plaintiff before the justice, and was related to the justice; the said Morgan and the justice having married sisters, and both their wives being alive at the time of the commencement of the suit before the justice and the rendition of the judgment therein. It appeared that Morgan recovered the judgment before a justice in the name of H. M., his brother, but that the brother had no interest in it. The court in that case, by Cowekt J., said, “It was said by counsel in behalf of the motion, that aparty and juror having married sisters would be no cause of challenge, but, I presume, hastily, for it is put among the commonest cases in the books, as an instance of affinity which disqualifies. It was holden very early, on writ of error to parliament, that the sheriff’s wife, being a sister to the plaintiff’s wife, was good cause of principal challenge to the array, (Markham v. Lee, cited in Mounson and West’s case, 1 Leon. 89.) We are free to confess that the question involved is somewhat subtle, far from being clear of difficulty, and the only means by which we have been enabled to solve it, as we think, has been by keeping steadily in view the principle as held in most of the cases referred to, and by looking entirely beyond and outside of it for the real merits of the question. The proposition is that “Affinity arises from marriage only, by which each party becomes related to all the consanguinei of the other party to the marriage, but in such case these respective consanguinei do not become related by affinity to each other.” It is said in Higbe v. Leonard, (1 Denio 186,) that, “A husband is related by affinity to all the consanguinei of his wife, and vice versa the wife to the husband’s consanguinei; for the husband and wife being considered one flesh, those who are related to the one by blood are related to the other by affinity. But the consanguinei of the husband are not at all related to the consanguinei. of the wife. It is contended that according to this rule, the respondent cannot be in any manner related to the defendant, Egner, inasmuch as his wife is only related to him by affinity, and that consequently to hold that an affinity exists as between them, would be in effect to put one affinity upon another, and that the law does not sanction such a process. This, it must be conceded, is plausible, and the rule itself, if strictly confined to its letter, and at the same time so construed as to exclude the idea of a further extension, would strongly incline to such a result. But in holding that the consanguinei of the respective parties to the marriage do not become related to each other either by consanguinity or affinity, it does not follow that the immediate parties themselves may not become related, not only to the consanguinei of each other, but also to all such of their relations as may arise from the tie of affinity. If the tie of affinity exists at all between the husbands of the aunt and neice, and that it does would seem to be established by the case in 1 Leonard 88, then it is that it must arise out of the rule as laid down in respect to the consanguinei of the respective parties to the marriage, when thus extended so as to embrace the relations contracted by the parties themselves. That the immediate parties to the marriage, by the very act of entering into that relation, impart properties to each other, which simultaneously run through all the ramifications of each other, would seem necessarily to result from the origin and nature of the institution of marriage itself, and also from the theory which the common law has entertained in reference to it from the earliest period of Bible history down to the present day. When the woman, which was made of one of the ribs of Adam was brought and presented to him in Paradise, he said, “This is now bone of my bone and flesh of my flesh; she shall be called woman, because she was taken out of man.” (See Genesis, ch. 2, ver. 23.) The same notion of identity or unity is kept up and carried out by my Lord Coke, (Co. Litt. 112,) when he says that “By marriage the husband and wife are one person in law, that is, the very being or legal existence of the woman is suspended during the marriage, or at least is incorporated and consolidated into that of her husband, under whose wing, protection and cover she performs every thing, and is therefore called in our law French a feme covert, fa-mina viro co-operta, is said to be covert baron, or under the protection and influence of her husband, her baron or lord, and her condition, during her marriage, is called her coverture. Upon this principle, of an union of person in husband and wife, depend almost all the legal rights, duties and disabilities that either of them acquires by the marriage. E'or this reason, a man cannot grant any thing to his wife, or enter into covenant with her; for the grant would be to suppose her separate existence, and to covenant with her would be to covenant with himself. (See Co. Litt. 112, and Bl. Com., 1st vol. 442.) It is upon the principle of a complete merger or incorporation of the very being and existence of the wife in that of her husband, and upon that alone that the relationship contended for, can be conceded. The act of marriage therefore, though creating a private relation, cannot be said in strictness to create any relationship either by consanguinity or affinity; because those relations pre-suppose a separate legal existence between the parties thus related, which, as we have shown, is not the case in respect to husband and wife. We think therefore, that, by the marriage of the respondent with the niece of the defendant’s wife, he placed himself in the same degree of propinquity to all the relations of his wife, in which she actually stood towards them, and that consequently he falls within the fourth degree of affinity to the defendant, Egner. If we are correct in this, and that we are we feel satisfied, then it is that the respondent is incompetent to preside in the cause, and consequently acted correctly in refusing to do so! The demurrer to the answer is therefore overruled, and the rule discharged.